## THE STATE OF TEXAS v. PEDRO SAIS, ET. AL.

SUPREME COURT, AUSTIN TERM, 1883.

Suit under Act of August 15th, 1870, for confirmation of three leagues of land; and see opinion of evidence as sufficiently showing such a right as would, according to law of December, 1826, (Colonization Law of Tamaulipas), have matured into a perfect grant, had not the sovereignty over the land passed to and vested in the Republic of Texas, and such a right as is included within the spirit of the act of 1870.

Appeal from Travis County.

*Attorney General and Peeler and Fisher* for Appellants.

*Chandler, Carleton and Robertson*, for Appellees.

Pedro Sais brought this suit against the State of Texas, under the Act of August 15th, 1870, for a confirmation of three leagues of land situated in Starr County. He claims as part owner and one of the heirs of Juan Jose Sais, deceased.

The case made is that Juan Jose Sais' father, appellee, was in possession of the land, in 1832, and in the fall of that year he denounced or designated the same as grazing lands and applied to the Alcalde of Camargo for such preliminary action as was necessary to secure the grant. That everything requisite under the laws of Tamaulipas was done, that is, appraisers and inspectors were appointed, the land was examined and appraised at $30 per league, and a survey was duly made by the surveyor General of Tamaulipas, and the expediente or Instructive Dispatch was made up, properly signed and attested, and together with the money, to-wit: the $90 was forwarded to the Governor of Tamaulipas.

It is not known, whether a grant was issued or not, as the records of the State of Tamaulipas were destroyed by the French troops in 1865. Juan Jose Sais occupied the land continuously until his death, and Appellee and the family have occupied it continuously since that time, the only breaks in that possession, has been on account of the incursions of hostile Indians, and that but once or twice, and then for a short time only. The claim was founded in good faith, and the expediente was attached to the petition.

The State answered by general and special exceptions and general denial.

The suit was tried February 13th, 1873, and a decree rendered in favor of appellee, conforming the grant to him and co-heirs, for the three leauges of land.

The State appealed and assigned errors, those that are not frivo-lous will be noticed in the opinion.

Opinion by Watts, J.

This suit was brought under the Act entitled, "An Act to ascer-tain and adjudicate certain claims for land against the State, situa-ted between the Nueces and Rio Grande Rivers." Approved Aug. 15th, 1870. The object of the suit is to secure the confirmation of an imperfect title to three leagues of land situated in Starr County.

Whatever right Appellee has to the land in controversy, accrued under the colonization laws of the State of Tamaulipas, of December 15th, 1826, and had its inception in 1832.

For a full discussion of the object, scope and construction of the Act of 1870, reference is made tothe able and exhaustive opinions of Chief Justice Roberts, in the cases of the State v. Cardinas; The State v. Francisis Cuellar, and cases following, reported in 47 Tex. 250-327.

Appellants demurrers were properly overruled, the land was suffi-ciently described in the petition for the purposes of identification.

Adjoining surveys and abuttals are given, also in the field notes of the survey.

The Attorney General agreed in writing, to waive the five days time and accepted service of the interrogatories. Also agreed to the appointment of the special commissioner to take the depositions of the witnesses. He had the opportunity of crossing the interrog-atories, and his failure to avail himself of that opportunity, will not defeat the right of the Appellee to the use of this evidence. The objection that the certificate of the Commissioner does not show that the witnesses swore to and subscribed their names to their respective answers is obviated by the amendment made by the officer with the permission of the Court.

Citizens as well as foreigners were included in the Colonization Law of Tamaulipas of December 15th, 1826, the only distinction made between the two in the acquisitions of land under it, is that citizens shall be preferred. Paschals Digest, Art. 783.

It is claimed that there was no law there in force authorizing a grant of three leagues, an examination of Article 25 of the law of 1826, shows the contrary to be the case; it is there provided that an adjudication may be made up to the amount of one hundred and twenty-five million square varas. That provision did not force upon

the applicant five leagues of land, whether he wished that much or not, but gave the right to designate such quantity of land as the party might desire, not to exceed five leagues. This construction of that article naturally results from the context as well as the plain import of the language, besides it is shown to have been the construction given to it by the officers of Tamaulipas, whose duty it was to execute the law.

Appellant urges as ground for the reversal of the judgment that this land was appraised at ten dollars per league, whereas the lowest limit fixed by law was thirty dollars. This position is not sustained by the record. On page 16 of the record will be found as part of the *expediente*, the report of the appraisers wherein it is stated "that according to their knowledge, and on account of the scarcity of water upon this land they appraised each of the leagues, of those that appear surveyed in this dispatch at the rate of thirty dollars." Again it is recited as part of the expediente that "The three leagues which appear surveyed and designated in this Dispatch, amount to the sum of ninety dollars, which in unison with this dispatch are directed to His Excellency the Govenor that he may dispose of the same according to his supreme will."

It is also objected to the judgment that there is no evidence in the record showing that the Alcalde of Camargo, put the applicant into the possession of the land. This claim for the land is not asserted as a perfect grant, but a right so far perfected as to entitle the appellee to a decree of confirmation.

The law of 1826, says: "The instructive dispatch being terminated, and no opponent of right resulting, the Alcalde shall pass it to the execution of the State, by whom the title of adjudication and ownership shall be issued to the person interested, ordering that the Alcalde of the town of his residence put him immediately in posession of the land granted."

Only where the grant was actually issued by the executive, that the order was made directing the alcalde to put the grantee in possession. If the grantee as here was already in possession of the land at the time of the designation, continued that possession, no good reason is seen why, even where the grant had been shown to have issued, that it should be shown by evidence, that the alcalde had gone through with the useless formality of investing the grantee with the possession of land, that he was then already in possession

of. But as before remarked, appellee does not assert his claim as a perfect grant, but as a right so far progressed toward completion, that had there been no change in government, that a grant would have issued, the time had not arrived, when the law required the order to be issued to the alcalde, to put the applicant in possession.

In passing upon the evidence, the court in effect found that the appraised value of the land, to-wit : $90, had been paid by the applicant. The evidence in the record tending to show that fact is the statement in the *expediente* that the three leagues had been appraised at the sum of ninety dollars, which with the dispatch had been directed to the Governor. Considering the fact that more than forty years has elapsed, this recital by a public officer, made in the discharge of his official duty, should be considered as sufficient, to sustain the finding of the court in that particular.

This claim had its origin in 1832, and appears to have been founded in good faith. The record evidence of the complainants right is the expediente, containing all the requisites of the law of 1826, and also the payment of the purchase money by the applicant, while the parol evidence shows that the appellee and his father have been in the continued possession from a time prior to the designation of the same in 1832. And that with the officials of Tamaulipas this was considered a perfect equitable title. The records of the State of Tamaulipas were destroyed in 1865, which placed it beyond the power of appellee to show by record evidence, what action, if any, was ever taken by the executive upon the expediente.

The evidence sufficiently shows this to have been such a right as would in accordance with the law of 1826, have matured into a perfect grant, had not the sovereignty over the land passed to and vested in the Republic of Texas. And such a right as is included within the spirit of the act of 1870.

The judgment of the court below ought to be affirmed.

JANUARY 26, 1883.

Report of Commissioners of Appeals examined, their opinion adopted and the judgment affirmed.

WILLIE, C. J,